UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARK ROBERTSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:13-CV-0728-G |
| WILLIAM STEPHENS, Director, Texas | ) | |
| Department of Criminal Justice, | ) | (Death Penalty Case) |
| Correctional Institutions Division, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

On May 13, 2013, Mark Robertson ("petitioner") filed a motion for leave to
proceed *ex parte* on his application for funding a mitigation investigator (docket entry
8). On May 14, 2013, petitioner filed a motion for leave to proceed *ex parte* on his
application for funding an attorney/mitigation expert (docket entry 10). With each
of these motions, petitioner has tendered the proposed *ex parte* filing. On May 23,
2013, respondent filed his response in opposition (docket entry 12) to petitioner's
motion for leave to proceed *ex parte* on the application for funding a mitigation

investigator (docket entry 8).  No response has been filed to the motion for leave to proceed *ex parte* on petitioner's application for funding an attorney/mitigation expert (docket entry 10), and the time has expired for filing a response to that motion. Therefore, the court considers respondent's arguments in connection with its consideration of both motions.

I.

The court has previously found that petitioner is entitled to the appointment of counsel and that this court may authorize petitioner's attorneys to obtain investigative, expert, or other services upon a finding that such services are reasonably necessary for the representation of petitioner.  *See* 18 U.S.C. § 3599(f).  Petitioner seeks leave to proceed *ex parte* and identifies generically the type of services needed:  a mitigation investigator (docket entry 8 at 1) and an attorney/mitigation expert (docket entry 10 at 1).  Petitioner also identifies the broad issue or topic for which the services are sought:  "an ineffective-assistance-of-counsel *Wiggins* claim" (docket entry 8 at 3; docket entry 10 at 3).  Petitioner also states generally that confidentiality is needed to protect "prior and proposed work product" or "privileged information" (docket entry 8 at 3; docket entry 10 at 3).  Respondent opposes leave to proceed *ex parte* (docket entry 12 at 1-7), and opposes the anticipated request for funding (docket entry 12 at 7-9).  The state court records have not yet been filed or made available to this court.

II.

A

There is no constitutional guarantee of counsel or expert services in federal postconviction review under 28 U.S.C. § 2254.  See *Coleman v. Thompson*, 501 U.S. 722, 752 (1991), modified by *Martinez v. Ryan*, 132 S.Ct. 1309, 1315, 1316-19 (2012)); *McFarland v. Scott*, 512 U.S. 849, 854-55 (1994).  Therefore, petitioner's entitlement to funding is based entirely on 18 U.S.C. § 3599(f), which also establishes the funding procedure:  "No ex parte proceeding, communication, or request may be considered pursuant to this section unless a proper showing is made concerning the need for confidentiality."  *Id.*  This language does not require courts to allow *ex parte* proceedings, but prohibits courts from doing so unless the required showing is made.  It is a significant departure from the prior practice.[1]

This provision has been interpreted to require a petitioner seeking such expense authorization *ex parte* to:

---

[1]  "In 1996, the AEDPA section 108 changed [the predecessor statute] 848(q)(9), removing the ex parte proceeding requirement and changing the mandatory 'shall' language to the discretionary 'may.'"  *Fuller v. Johnson*, 114 F.3d 491, 502 (5th Cir. 1997) (citing AEDPA § 108, Pub.L. No. 104-132, 110 Stat. 1226 (1996)).  Discussing these amendments, the United States Court of Appeals for the Tenth Circuit observed, "[o]ne of the amendments, applicable only to death penalty cases, changes the presumption from an ex parte hearing for services other than counsel to a process which is not to be held ex parte 'unless a proper showing is made concerning the need for confidentiality.'"  *United States v. Gonzales*, 150 F.3d 1246, 1264 (10th Cir. 1998) (quoting 21 U.S.C. § 848(q)(9)).

> file and serve a brief motion seeking generally
> authorization for investigative or expert expenses,
> [including] a short case-specific statement of the need for
> confidentiality.  The statement of need for confidentiality
> merely must identify generically the type of services needed
> and the broad issue or topic (*e.g.*, innocence) for which the
> services are necessary.  Simultaneously, the petitioner must
> file *ex parte* and under seal his detailed application for
> authorization for the investigator or expert, and must
> estimate the amount of fees or expenses likely to be
> incurred.  The petitioner must provide factual support for
> the funding request.  The motion, but not the application
> with supporting materials, must be served on the
> respondent.

*Patrick v. Johnson*, 37 F. Supp. 2d 815, 816 (N.D. Tex. 1999) (Kaplan, M.J.) (quoting

*Dowthitt v. Johnson*, No. H-98-3282 slip op. at 4, 1998 WL 1986954, at *2 (S.D. Tex.

Dec. 2, 1998)).

B

The *Patrick* procedure has been interpreted to require nothing more than to

generically identify the type of services needed and the broad issue or topic to be

investigated in order to make the required showing of a need for confidentiality.

Another judge of this district has observed that such a procedure would not be

adequate:

> The court does not approve the procedure in *Patrick* to the
> extent that it provides that an applicant is only obligated to
> "identify generically the type of services needed and the
> broad issue or topic (*e.g.*, innocence) for which the services
> are necessary"; this would neither demonstrate a need for
> confidentiality nor explain why the funding request could
> not be made publicly, as § 3599(f) contemplates.

- 4 -

*Threadgill v. Thaler*, No. 3:05-CV-2217-D, slip op. at 2 n.2 (N.D. Tex., Oct. 11, 2012)

(Fitzwater, C.J.); see also *Ruiz v. Thaler*, No. SA-03-CA-303-OG, slip op. at 2 (W.D.

Tex., Aug. 31, 2011) (Garcia, J.) (finding that under *Patrick* "it is unnecessary for a

petitioner to explain in clear and concise terms why secrecy is necessary in a particular

case before a petitioner may solicit in an *ex parte* manner unlimited federal funding for

investigative and expert expenses and fees.").[2] This court, therefore, revises the

procedure in *Patrick* to clarify what is required to make a proper showing of the need

for confidentiality under § 3599(f) in this case.

### III.

In allowing a habeas petitioner to proceed *ex parte* in procuring investigative or

expert assistance, the court must balance a petitioner's need for a confidentiality in

preparing her case with other factors such as:  (1) the State's interest in evidentiary

---

[2]      It is not entirely clear that this interpretation was intended.  The issue in
*Patrick* was not whether some need for confidentiality had been shown, but the degree
of specificity required under § 3599(f).  Petitioner Patrick argued that it merely
required a "general" showing of the need for confidentiality, and asserted that he
fulfilled this requirement because "(1) the state habeas proceeding was 'woefully
inadequate;' and (2) demonstration of the need for outside services would reveal the
contents of privileged conversations and attorney work product."  37 F. Supp. 2d at
816.  The respondent argued that the showing of the need for confidentiality had to
be "specific."  *Id.*  The court found that Patrick's showing of the need for
confidentiality was not sufficiently case-specific.  "Here, petitioner asserts only a
generic need for confidentiality which arises in virtually all capital cases."  *Id.  Patrick*
relied on *Dowthitt*, in which the court also concluded that "this requirement has not
been satisfied by Dowthitt's conclusory assertions of the attorney-client or work
product privileges."  1998 WL 1986954, at *2.  Both courts found that § 3599(f)
required more.

development in federal habeas proceedings; (2) the public's interest in fiscal

transparency; and (3) the court's need for reliable information in deciding whether

the requested assistance is really necessary.  It has been the court's experience that *ex*

*parte* evidence "very seldom leads to the proper discovery of truth." *Crawford v.*

*Washington*, 541 U.S. 36, 49 (2004).  "It is, however, unclear how a habeas petitioner

. . . 'can explain the need to proceed ex parte without disclosing the very information

they claim a need to keep secret.'" *Haight v. Parker*, 2010 WL 1489979, at *9 (W.D.

Ky., Apr. 13, 2010) (Simpson, J.) (quoting Randy Hertz & James S. Liebman, Federal

Habeas Corpus Practice and Procedure § 19.3 n.17 (5th ed.2009)).  Similar concerns

have long existed in the pretrial discovery of civil cases.  The Federal Rules of Civil

Procedure set forth a balanced procedure for withholding information from discovery

in civil proceedings.[3]  These rules apply in federal habeas proceedings to the extent

---

[3]     Rule 26(b)(5) of the Federal Rules of Civil Procedure provides:

> When a party withholds information
> otherwise discoverable by claiming that the
> information is privileged or subject to
> protection as trial-preparation material, the
> party must:
>
> > (i) expressly make the claim; and
> >
> > (ii) describe the nature of the
> > documents, communications, or
> > tangible things not produced or
> > disclosed -- and do so in a
> > manner that, without revealing

(continued...)

that they "are not inconsistent with any statutory provisions or [the habeas rules]."

*Mayle v. Felix*, 545 U.S. 644 (2005) (quoting predecessor to Rule 12 of the Rules

Governing Section 2254 Cases in the United States District Courts).

A

A habeas petitioner, like any other litigant, has an interest in the

confidentiality of attorney-client communications and attorney work product.  These

privileges protect communications and other tangible materials in existence.[4]

Regarding any such work product or privilege by any prior counsel, a habeas

petitioner waives the privilege with respect to the attorney against whom a claim of

ineffective assistance of counsel is asserted.  See *United States v. Ballard*, 779 F.2d

287, 292 (5th Cir. 1986); *Laughner v. United States*, 373 F.2d 326, 327 (5th Cir.

_____

[3](...continued)

> information itself privileged or
> protected, will enable other
> parties to assess the claim.

[4]    Rule 502(g) of the Federal Rules of Evidence defines these privileges as
follows:

> (1) "attorney-client privilege" means the
> protection that applicable law provides for
> confidential attorney-client communications;
> and
>
> (2) "work-product protection" means the
> protection that applicable law provides for
> tangible material (or its intangible equivalent)
> prepared in anticipation of litigation or for
> trial.

- 7 -

1967) ("where, as here, the client alleges a breach of duty to him by the attorney, we have not the slightest scruple about deciding that he thereby waives the privilege as to all communications relevant to that issue.").  Since all of prior counsel's relevant communications and attorney work product would seem to be laid bare in reviewing their representation, it is not clear what portion of the prior mitigation investigation would remain confidential.  Regarding "proposed" work product, the privilege would not prevent the disclosure of information that is not already known to respondent or that constitutes the attorney-client communications or work product of prior counsel that is at issue.  While a habeas petitioner has an interest in protecting the identity of potential witnesses, it may be less than that of a criminal defendant in pretrial proceedings.[5]

Except for revealing the actual identities of the proposed investigator or expert, it is difficult to see how making an argument for the funding of a mitigation expert or investigator in accordance with ordinary habeas principles and practices will require

---

[5]     In *United States. v. Meriwether*, 486 F.2d 498 (1973), the Court of Appeals discussed amendments to the Federal Rules of Criminal Procedure to allow indigent criminal defendants to proceed *ex parte* in requesting subpoenas for trial. "The names of witnesses to be called by the defendant could easily aid the government in determining the strategy the defendant plans to use at trial."  *Id*, 486 F.2d at 506.  This amendment, however, "was not intended to protect the defendant from opposition from the prosecutor; it was intended to shield the theory of his defense from the prosecutor's scrutiny."  In *Meriwether*, however, the violation of this provision did not prejudice the defense.  "The major factor which causes us to reach this conclusion is that this was not the first, but the second trial of the same charges against the defendant."  After the first trial, the need to shield the identify of witnesses is diminished.

the disclosure of confidential or privileged information at this stage in the proceedings.  The court must not lose sight of the fact that "the state trial on the merits" is "the 'main event,' so to speak, rather than a 'tryout on the road' for what will later be the determinative federal habeas hearing." *Coleman v. Thompson*, 501 U.S. 722, 747 (1991) (quoting *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977)).

B

The court agrees with respondent that the legislative history of § 3599(f) suggests that Congress intended both parties to have some role in the process for funding experts and investigators in the postconviction habeas review of death-penalty cases in federal court (Resp. at 3-5).  If the court grants leave to proceed *ex parte*, these motions for leave may provide the only information available to respondent and the only opportunity he will be afforded to participate in the funding process.  It is at this point in the process when a respondent makes his argument in opposition to whatever funding request is believed to be tendered *ex parte*, and produces any records or other information that may be needed to make a proper determination of the funding request.

The instant motions for leave to proceed *ex parte* do not appear sufficient for respondent to identify those portions of the record that should be considered by this court.  Based on the limited information contained in the motions, respondent characterizes petitioner's funding request as a "fishing expedition" (docket entry 12 at

8) and argues that "it does not appear that Robertson raised a *Wiggins* claim on appeal or in state habeas proceedings.  Hence, such a claim would be defaulted" (docket entry 12 at 9).  Further, the motions provide little notice of the potential factual development sought.  Petitioner does not disclose the amount of funding requested for investigative and expert assistance, even though that fact would not appear to be confidential and would provide some notice of its potential impact on this litigation.

Making these disclosures in the motions served on the respondent should facilitate this process, increase its fairness, and bring it closer to the intent of the statute.  As observed by respondent, a "federal habeas corpus proceeding is no place for sandbagging" (Resp. at 7).  While there is no indication that any omission was intentionally designed to "sandbag" the respondent, the practical effect is the same. It has deprived him of a meaningful opportunity to provide information necessary for this court to make a proper determination of this important funding matter. Therefore, the motion to proceed *ex parte* should disclose the nonprivileged information necessary for an adequate response not only to whether to proceed *ex parte*, but to the funding motion itself.

C

In determining whether and to what extent further mitigation investigation is now required, it is important to ascertain what mitigation information is already

- 10 -

available to the petitioner.  Duplicating prior mitigation investigations would

unnecessarily waste judicial resources.  The history of this case suggests ample prior

opportunities to develop any needed mitigation evidence.[6]  The state court record,

however, is not yet before this court, and neither party's filing allows the court to

---

[6]        Robertson has received two punishment trials, two direct state appeals,
three state habeas proceedings, and a prior federal habeas review and appeal, during
most of which his mitigating evidence was in issue.  He was originally convicted and
sentenced to death in 1991 for a murder on August 19, 1989.  *State v. Robertson*, No.
F89-85961-NL (Crim. Dist. Ct. No. 5, Dallas County, Tex. Feb. 11, 1991).  The
Texas Court of Criminal Appeals ("CCA") affirmed the sentence and subsequently
denied habeas-corpus relief as well.  *Robertson v. State*,  871 S.W.2d 701 (Tex. Crim.
App. 1994); *Ex parte Robertson*, WR-30,077-01 (Tex. Crim. App. Nov. 18, 1998).
This court denied federal habeas relief, and the Court of Appeals denied a certificate
of appealability. *Robertson v. Johnson*, 234 F.3d 890 (5th Cir. 2000).  The Supreme
Court then vacated the judgment of the Court of Appeals and remanded for further
consideration in light of *Penry v. Johnson*, 532 U.S. 782 (2001) (holding that
"nullification" jury instructions in Texas capital murder trial failed to correct previous
failure to provide jury with a vehicle to give effect to mitigating evidence).  *Robertson
v. Johnson*, 533 U.S. 901 (2001).  On remand, the Court of Appeals subsequently
affirmed the denial of habeas relief, finding that the special issues in Robertson's trial
allowed the jury to give mitigating effect to his proffered evidence.  *Robertson v.
Cockrell*, 325 F.3d 243 (5th Cir. 2003) (en banc).  On subsequent state habeas review,
the CCA later vacated the death sentence and ordered a new punishment hearing,
concluding that the nullification instruction to the jury impermissibly limited the
jury's ability to consider and give effect to mitigating evidence presented during
Robertson's first trial, *Ex parte Robertson*, No. AP-74,720, WR-30077-02, 2008 WL
748373 (Tex. Crim. App. Mar. 12, 2008).  The second punishment hearing was
conducted in 2009 and resulted in another death sentence which was affirmed on
direct appeal in 2011.  *Robertson v. State*, No. AP-71,224, 2011 WL 1161381 (Tex.
Crim. App. 2011).  State habeas relief was sought on this second death sentence and,
after an evidentiary hearing in the trial court, was denied on January 9, 2013.  *Ex
parte Robertson*, No. WR-30077-03, 2013 WL 135667 (Tex. Crim. App. Jan. 9,
2013).

ascertain the extent of any prior mitigation investigations and, consequently, the need for more investigative assistance.

IV.

For the reasons set out above, the following procedure will apply in requesting leave to proceed *ex parte* in seeking funding in this case.  Petitioner should file and serve respondent with the motion seeking authorization for investigative or expert expenses, and include a case-specific statement of the need for confidentiality regarding any matters sought to be considered *ex parte*.  The motion should include the type of services needed, the issue or topic for which the services are necessary, an estimate of the total amount of fees and expenses requested, and all other nonprivileged information relevant to the request for funding.  The motion must also show a specific need for confidentiality in the undisclosed matters presented to the court *ex parte*, and not merely a general assertion of a blanket attorney/client or work-product privilege.  Without revealing information itself privileged, petitioner must provide enough information to respondent to (1) enable him to test the merits of the privilege claim, and (2) provide him a meaningful opportunity to supply any relevant information to the court regarding whether the requested services are necessary. Simultaneously, petitioner may file *ex parte* and under seal his application for authorization for the investigator or expert, including the specific identity and

qualifications of the investigator or expert sought to be appointed and a detailed

estimate of the projected time, hours, and expenses to be incurred.

Petitioner must provide factual support for the funding request, including any

pertinent state court records and prior funding records, but may only exclude

privileged matters from the motion served on respondent.  In the response to the

motion for leave to proceed *ex parte*, respondent may oppose both leave to proceed *ex*

*parte* and the funding that is sought.  Respondent should provide all pertinent state

court records not already filed or produced by any party prior to that time, including

any available records of payments for prior investigations, attorney, or expert services.

Any information that should not be revealed publicly, even though not rising to the

level of confidentiality warranting its consideration *ex parte*, may be filed under seal

and otherwise properly disclosed to the opposing party.[7]

V.

The court finds that petitioner has not made a proper showing concerning the

need for confidentiality.  Petitioner may either supplement his motions for leave to

proceed *ex parte* with the information listed above within 21 days of this order, or he

---

[7]        Regarding court filings, the term "ex parte" refers to those that are
"made at the instance and for the benefit of one party only, and without notice to, or
argument by, any person adversely interested."  Blacks Law Dictionary 657 (9th ed.
2009).  The term "seal" refers to a "fastening that must be broken before access can
be obtained."  *Id*., at 1466.  In federal court, a sealed record is one that has restricted
access.  An *ex parte* record is one that is accessible to only one party and the court.
Therefore, an *ex parte* record is always sealed, but a sealed record is not always *ex parte*.

may serve the applications upon respondent that were previously tendered *ex parte*.

Respondent is allowed 14 days from the date that any supplemented motion for leave to proceed *ex parte* or re-filed application is filed to make his response.  Extensions of time may be granted for good cause shown.

      **SO ORDERED**.

June 13, 2013.

A. JOE FISH
**Senior United States District Judge**
