IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MARK ROBERTSON,             §
           Petitioner, §
           §
v.                      §        CIVIL ACTION No. 3:13-CV-728
           §
           §        (Death Penalty Case)
           §
WILLIAM STEPHENS, Director,    §
Texas Department of Criminal Justice, §
Correctional Institutions Division,    §
           Respondent. §

**PETITIONER ROBERTSON'S
MOTION FOR RECONSIDERATION OF ORDER
ADDRESSING STANDARD FOR LEAVE TO FILE *EX PARTE* APPLICATIONS FOR
ANCILLARY SERVICES AND BRIEF IN SUPPORT**

Petitioner Mark Robertson requests that the Court reconsider its June 13, 2013 Order [Doc #13] addressing the standard for leave to file ex parte applications for ancillary funding pursuant to 18 U.S.C. § 3599(f). Contemporaneously with this motion and brief in support, counsel has submitted an amended motion asking the Court to grant leave to file and to consider *ex parte* her application for authorization to obtain the pre-petition services of a mitigation investigator in order to address more fully counsel's need for confidentiality [Docs ##17 & 18], and to withdraw prior requests, [Docs #10 & 11], for leave for *ex parte* consideration of her application for the services of an attorney/mitigation expert.

# TABLE OF CONTENTS

I.     Procedural History. ......................................................................................... -4-

II.    In any post conviction proceeding under 28 U.S.C. § 2254, an indigent defendant seeking to vacate a death sentence is entitled by federal statute to adequate representation, which includes the furnishing of investigative, expert, or other services that are reasonably necessary for the adequate representation of the defendant. ........................................... -4-

III.   *Threadgill*, upon which this court relied to depart from *Patrick*, misunderstood the *Patrick* procedure.......................................................................................................... -7-
     A.     The Patrick Procedure........................................................................ -7-
     B.     *Threadgill* misunderstood *Patrick* to limit *ex parte* consideration to merely the "short case-specific statement of the need for confidentiality". ..................................... -8-
     C.     The procedure in *Patrick* also depends upon the Court's *in camera* assessment of the *proposed ex parte* pleading and whether filing it publicly would reveal confidential information........................................................................................ -8-

IV.    Confidential information to which the state is not entitled........................................... -10-
     A.     Respondent is not entitled to attorney work product in an application for authorization to obtain ancillary services, which demonstrates a need for confidentiality. ...................................................................................... -11-
     B.     Habeas corpus proceedings are the "main event" for determining a legal question entirely different from the state trial: whether Mr. Robertson's confinement violates the constitution of the United States. ................................................................ -13-
     C.     Respondent is not entitled to attorney work product in an application for authorization for ancillary services related to counsel's federal court habeas representation........................................................................................ -15-
     D.     Disclosing habeas counsel's assessments in an application for authorization for ancillary services is the equivalent to granting Respondent discovery – prohibited absent leave of court and only after a showing of good cause. .......................... -16-

V.    An indigent capital defendant's entitlement to leave to proceed *ex parte* on a request for investigative, expert, or other services cannot be made to depend on the balancing test proposed by the court. ....................................................................................... -17-
     A.     The text of the statute itself provides the criteria for consideration of a request for ancillary services *ex parte*: a showing that confidential information would be disclosed........................................................................................... -17-
     B.     The change in the statute did not create a State interest in evidentiary development, nor was it intended to grant to the State a role in pre-petition funding ............. -18-
     C.     Congress has already addressed the public's interest in fiscal transparency by requiring disclosure <u>*after*</u> the disposition of the petition. .................................. -20-
     D.     Respondent, as a party opponent, is not a reliable source of information about what tools his adversary should have. The Court's need for reliable information is best accomplished by allowing counsel the freedom to reveal to the Court, in camera, the work product that reveals why and how ancillary services are needed.............. -21-

VI.     The procedure outlined in *Patrick* is an appropriate mechanism for the court to determine whether a showing of the need for confidentiality has been made. ................................ -22-

Conclusion. ....................................................................................................................... -24-

Certificate of Conference. ................................................................................................. -24-

Certificate of Service. ....................................................................................................... -25-

## I.      Procedural History

On May 13 and 14, 2013, counsel for Mr. Robertson moved this Court pursuant to 18 U.S.C. § 3599(f) for leave to file requests for authorization to obtain investigative and expert services, respectively, *ex parte*. *See* [Docs ##8-11].   In her motions, counsel followed the well-established procedure in the United States District Court for the Northern District of Texas for seeking leave to file requests for authorization to obtain ancillary services *ex parte*. *See Patrick v. Johnson*, 37 F.Supp. 2d 815, 816 (N.D. Tex. 1999) (adopting the procedure described by *Dowthitt v. Johnson*, No. H-98-3282, 1998 WL 1986954 (S.D. Tex. Dec. 2, 1998)).

On June 13, 2013, this Court denied leave to file the requests *ex parte*. *See* Document 13. The Court, relying on a different, unpublished decision of this District questioning the propriety of the *Patrick* procedure, *see Threadgill v. Thaler*, No. 3:05-CV-2217-D, slip op. at 2 n.2 (N.D. Tex., Oct. 11, 2012), decided to "revise" the *Patrick* procedure "to clarify what is required to make a proper showing of the need for confidentiality under § 3599(f) in this case." Document 13 at 5. Counsel for Mr. Robertson seeks reconsideration of the Court's decision to revise the *Patrick* procedure.

## II.     In any post conviction proceeding under 28 U.S.C. § 2254, an indigent defendant seeking to vacate a death sentence is entitled by federal statute to adequate representation, which includes the furnishing of investigative, expert, or other services that are reasonably necessary for the adequate representation of the defendant

Federal statutory law provides indigent persons a right to "adequate representation" in any post conviction proceeding under 28 U.S.C. § 2254 seeking to vacate a death sentence. 18 U.S.C. § 3599(a)(2). To accomplish this, Congress guaranteed to such persons a right to the appointment of one or more attorneys and to the furnishing of investigative, expert, or other reasonably necessary services. *Id.* "Congress' provision of a right to counsel . . . reflects a determination that quality legal

-4-

representation is necessary in capital habeas corpus proceedings in light of 'the seriousness of the possible penalty and . . . the unique and complex nature of the litigation.'" *McFarland v. Scott*, 512 U.S. 849, 855 (1994).

It is important to note at the outset that Section 3599 bestows a federal right to certain services—adequate representation and the provision of ancillary services reasonably necessary to such representation—on certain qualifying individuals—defendants seeking to vacate a death sentence in a post-conviction proceeding under section 2254 and who are financially unable to obtain such services. The provisions of Section 3599 do not in any way govern the adjudication of a habeas corpus petition, and the federal court's role is to ensure that an individual who by right qualifies for such services is not deprived of them.

The right to adequate representation requires the appointment of counsel to an individual seeking to set aside a death sentence in federal habeas corpus proceedings upon a showing that the defendant is or has become financially unable to obtain adequate representation. 18 U.S.C. § 3599(a)(2). The right to adequate representation further requires the provision of investigative, expert, or other ancillary services "upon a finding that ... [such] services are reasonably necessary for the representation of the defendant." 18 U.S.C. § 3599(f).

When first enacted, the statute required proceedings to determine the reasonable necessity of ancillary services to be conducted *ex parte* to protect against the disclosure of confidential attorney work product by counsel representing an indigent habeas petitioner.[1] Anti-Drug Abuse Act of 1988, Pub. L. No. 100–690, § 7001, 102 Stat 4181, 4394 (1988) (amended 1996) ("Upon a finding in ex parte proceedings that investigative, expert or other services are reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or

---

[1] Texas law likewise requires its courts to consider requests for ancillary services made by appointed counsel *ex parte*. *See* Tex. Code Crim. Proc. art. 11.071 § 3(b).

sentence, the court shall authorize the defendant's attorneys to obtain such services on behalf of the defendant and shall order the payment of fees and expenses therefore, under paragraph (10)").

A 1996 "technical amendment" clarified the statute to permit federal courts to deny *ex parte* proceedings where an application from counsel representing an indigent capital habeas petitioner does not in fact reveal any confidential information.[2] 18 U.S.C. § 3599(f) ("No ex parte proceeding, communication, or request may be considered pursuant to this section unless a proper showing is made concerning the need for confidentiality"). *See also Lindh v. Murphy*, 521 U.S. 320, 327 n.3 (1997).

In *McFarland*, *supra*, the Supreme Court addressed whether the entitlement to adequate representation now contained in Section 3599 attached before the formal filing of a federal habeas corpus petition. Observing that the services of investigators and other experts are "critical" to counsel's ability to adequately represent a capital habeas corpus petitioner, the Court ruled that the right to the resources described in § 3599 attached prior to the filing of a formal habeas petition: "the right to counsel necessarily includes a right for that counsel meaningfully to research and present a defendant's habeas claims." *McFarland*, 512 U.S. at 855-56, 858.

Depriving an indigent capital habeas petitioner of the means to develop habeas corpus claims before filing a habeas corpus application would "defeat" the "express requirement of counsel." *Id.* at 856. The *McFarland* Court reasoned that failing to afford these services before the filing of the petition defeated the right intended to be granted because it would expose indigent capital habeas petitioners "to the substantial risk that [their] habeas claims never would be heard on the merits." *Id.* at 856.

---

[2] Technical amendments are typically not intended to make substantive changes but rather to correct technical errors or unclear phrases in extant legislation. *See, e.g., The United Servs. Auto. Ass'n v. Perry*, 102 F.3d 144, 152 (5th Cir. 1996) (DeMoss, J., dissenting); *Estey v. Comm'r, Maine Dep't of Human Servs.*, 21 F.3d 1198, 1206 (1st Cir. 1994).

Accordingly, it is clear that:

(1)    the provision of ancillary services which are reasonably necessary to representation is part of the statutory guarantee of adequate representation afforded to capital habeas corpus petitioners by Congress; and

(2)    deprivation of the right to adequate representation occurs when failure to provide counsel and/or ancillary services creates a substantial risk that a petitioner's habeas corpus claims would never be heard on the merits.

### III.    *Threadgill*, upon which this court relied to depart from *Patrick*, misunderstood the *Patrick* procedure.

#### A.    The Patrick Procedure

In *Patrick v. Johnson*, 37 F.Supp. 2d 815, 816 (N.D. Tex. 1999), this Court announced a procedure for determining whether a need for confidentiality entitling counsel to file *ex parte* requests for ancillary services has been made. The *Patrick* Court relied on and adopted the procedure announced by the United States District Court for the Southern District of Texas in *Dowthitt v. Johnson*, No. H-98-3282 slip op. at 4, 1998 WL 1986954, at *2 (S.D. Tex. Dec. 2, 1998).

According to this procedure,

The petitioner must file and serve a brief motion seeking generally authorization for investigative or expert expenses, and must include a short case-specific statement of the need for confidentiality. The statement of need for confidentiality merely must identify generically the type of services needed and the broad issue or topic (e.g., innocence) for which the services are necessary. Simultaneously, the petitioner must file ex parte and under seal his detailed application for authorization for the investigator or expert, and must estimate the amount of fees or expenses likely to be incurred. The petitioner must provide factual support for the funding request. The motion, but not the application with supporting materials, must be served on the respondent. If the Court concludes that the petitioner has established good cause for confidentiality as required by § 848(q)(9),[3] the Court will maintain the application (and supporting materials) under seal and will consider the merits of the request. Otherwise, the Court will give the petitioner the option of (i) withdrawing the application and having all associated materials returned to the petitioner or (ii) filing

---

[3]    Section 848(q)(9) was subsequently moved to 18 U.S.C. § 3599(f) but remained substantively unchanged.

the application publicly and serving a copy on the respondent. The respondent will not be given an opportunity to comment on the detailed application or issues raised therein unless the Court so orders.

*Dowthitt*, 1998 WL 1986954 at *2. *See also Shields v. Johnson*, 48 F. Supp. 2d 719, 720-21 (S.D. Tex. 1999) (reiterating adoption of *Dowthitt* standard).

Thirteen years after *Patrick*, a court of this District observed in an unpublished order that the *Patrick* procedure was inadequate to demonstrate a need for confidentiality. *Threadgill v. Thaler*, No. 3:05-CV-2217-D, slip op. at 2 n.2 (N.D. Tex., Oct. 11, 2012). In denying counsel for Mr. Robertson's request to make her applications for authorization to obtain ancillary services *ex parte* and in deciding to revise the *Patrick* procedure, this Court relied upon *Threadgill*. Document 13 at 5. *Threadgill*, however, misunderstood the *Patrick* procedure.

**B.      *Threadgill* misunderstood *Patrick* to limit *ex parte* consideration to merely the "short case-specific statement of the need for confidentiality"**

Specifically, *Threadgill* assumed that it is the publicly filed "short case-specific statement of the need for confidentiality" in the motion for leave to file *ex parte* that alone entitles the petitioner to obtain consideration of an *ex parte* application for ancillary funding. *See Threadgill*, slip op. at 2 n.2 (referring to the obligation to identify generically the type of services needed and the broad issue or topic for which the services are necessary as inadequate to demonstrate a need for confidentiality).

**C.      The procedure in *Patrick* also depends upon the Court's *in camera* assessment of the *proposed ex parte* pleading and whether filing it publicly would reveal confidential information.**

Under the *Patrick* procedure, however, it is not the short case-specific statement of the need for confidentiality in the motion for leave that alone entitles an indigent capital habeas petitioner to

make the request *ex parte*. Rather, *Patrick* requires that, in addition to the case-specific statement of the need for confidentiality contained in the motion for leave, counsel for the habeas petitioner simultaneously submit her proposed *ex parte* application under seal for *in camera* review.[4] *Dowthitt*, 1998 WL 1986954 at *2.

The Court must then review the detailed application *in camera* to determine whether it warrants *ex parte* consideration, *i.e.*, whether it contains confidential information to which the respondent is not otherwise entitled. *Id*. If it does not, "the Court will give the petitioner the option of (i) withdrawing the application and having all associated materials returned to the petitioner or (ii) filing the application publicly and serving a copy on the respondent." *Id*. Thus, it is not merely the "short case-specific statement of the need for confidentiality" in the motion for leave to file that entitles a petitioner to have a request for ancillary services considered *ex parte*. It also depends upon the Court's *in camera* assessment of the *proposed ex parte* pleading and whether filing it publicly would reveal confidential information.

This conclusion follows directly from the *Dowthitt* and *Patrick* Courts' disposition of the motions for leave to file *ex parte* in those cases. In both cases, the petitioner had simply filed the motion for leave unaccompanied by a proposed detailed funding application under seal. *Dowthitt*, 1998 WL 1986954 at *3; *Patrick*, 37 F.Supp. at 816. Absent any confidential information having been proposed to be filed, both courts held that the petitioner had failed to make a proper showing of the need for confidentiality and denied the motion for leave. *Dowthitt*, 1998 WL 1986954 at *3; *Patrick*, 37 F.Supp. at 816.

---

[4] Disclosure of allegedly privileged materials to the district court for purposes of determining the merits of a claim of confidentiality does not have the legal effect of terminating the asserted privilege. *United States v. Zolin*, 491 U.S. 554, 568 (1989).

IV.     **Confidential information to which the state is not entitled**

Mr. Robertson is indigent. He therefore must rely on this Court to protect his right to adequate representation to which Section 3599 entitles him. The right to adequate representation includes the right to ancillary services which are reasonably necessary to the representation.  Mr. Robertson's indigence, however, should not have the result of forcing him to disclose confidential work-product to an opposing party before federal law would otherwise require a non-indigent party do so in order to obtain the benefit of a right bestowed by Congress.  Otherwise, the application of the statute raises equal protection concerns. *See Griffin v. Illinois*, 351 U.S. 12, 18 (1956) (plurality opinion) (equal protection clause forbids government to grant legal rights in a way that discriminates against some convicted defendants on account of their poverty). Where possible, statutes should be interpreted and applied in a manner that avoids raising questions about their constitutionality. *United States v. Delaware & Hudson Co.*, 213 US 366, 407 (1909).

**A.    Respondent is not entitled to attorney work product in an application for authorization to obtain ancillary services, which demonstrates a need for confidentiality**

A court need not guess whether an application contains confidential information, but should resort to sources of law that confer confidentiality. Attorney work product is confidential information to which an opposing party in litigation is not entitled except under extremely limited circumstances. The attorney work product doctrine "provides a working attorney with a 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories." *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854 (D.C. Cir. 1980). At heart, the work product doctrine "protect[s] against disclosure the mental impressions, conclusions, opinions or legal theories concerning the litigation of an attorney or other representative of a party." Fed. R. Civ. P. 26, Advisory Comm. Notes, 1970 Amendment.

The importance of the privilege for serving the ends of justice has been aptly described by the Supreme Court:

> Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways-aptly though roughly termed … the 'Work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947).

> At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself. Moreover, the concerns reflected in the work-product doctrine do not disappear once trial has begun. Disclosure of an attorney's efforts at trial, as surely as disclosure during pretrial discovery, could disrupt the orderly development and presentation of his case.

*United States v. Nobles*, 422 U.S. 225, 238-39 (1975).

The work-product doctrine reflects the strong public policy underlying the orderly prosecution and defense of legal claims, *id.* at 236-37, and has been substantially incorporated into Federal Rule of Civil Procedure 26(b)(3) as it relates to discovery, providing that a party may obtain discovery of work-product "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Even then, "the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Id.* Accordingly, an application for authorization to obtain ancillary services that contains attorney work product contains confidential information to which a respondent is not entitled and which demonstrates a need for confidentiality.

**B.      Habeas corpus proceedings are the "main event" for determining a legal question entirely different from the state trial: whether Mr. Robertson's confinement violates the constitution of the United States**

Applications for ancillary services from counsel representing an indigent client are likely to—but do not necessarily have to—contain confidential attorney work product. *See Williams v. State*, 958 S.W.2d 186, 193 (Tex. Crim. App. 1997) (in order to plead case that ancillary services are reasonably necessary, a "defendant necessarily has to explain his theories and describe with some specificity how an expert would assist him" which in turn "compels a defendant to disclose to the State his defensive theories or 'work product'"); *Ake v. Oklahoma*, 470 U.S. 68, 82–83 (1985) (presuming that requests for ancillary services be made *ex parte*). Perhaps for this reason, whether the application contained any confidential information was legally irrelevant to whether it could receive *ex parte* consideration before Section 3599(f)'s amendment. All such applications were required to be considered *ex parte*. After amendment, only those applications that the court confirms actually contain confidential information are permitted *ex parte* consideration.

In its order, this Court concluded that it is difficult to see how making an argument for authorization to obtain a mitigation investigator during a federal habeas corpus proceeding would require the disclosure of confidential information. Document 13 at 8-9. The Court relied on the principle that the state trial on the merits is the "main event." Document 13 at 9 (quoting *Coleman v. Thompson*, 501 U.S. 722, 747 (1991)). While it is of course true that the state trial on the merits is the main event for determining whether Mr. Robertson is guilty of having committed a crime, habeas corpus proceedings are the main event for determining an entirely different legal question: whether Mr. Robertson's confinement violates the constitution of the United States.[5] *See* 28 U.S.C. § 2241(c)(3); *McFarland*, 512 U.S. at 859 (Recognizing that although a criminal trial is the "main

---

[5] Although the Anti-terrorism and Effective Death Penalty Act significantly limited the federal court's power to grant relief to a person confined pursuant to a state court judgment, it did not alter the fundamental nature of habeas corpus or the federal question involved.

event," "criminal defendants are entitled by federal law to challenge their conviction and sentence in habeas corpus proceedings."); *Townsend v. Sain*, 372 US 293, 311-12 (1963) ("The whole history of the writ—its unique development—refutes a construction of the federal courts' habeas corpus powers that would assimilate their task to that of courts of appellate review. The function on habeas is different. It is to test by way of ***an original civil proceeding***, independent of the normal channels of review of criminal judgments, the very gravest allegations." (emphasis supplied)). Mr. Robertson's interest in work product related to federal court adjudication of the legality of his confinement is no less than in any other civil action raising any other federal question. [6]

---

[6] The requirement of exhaustion—which existed long before *Townsend* was decided—does not alter the nature of a federal habeas corpus proceeding as an original civil action in which counsel for the petitioner creates confidential work product. This is especially so with respect to putatively procedurally defaulted claims—i.e., claims that were not adjudicated on the merits by the state court—but for which cause and prejudice may exist. *See Trevino v. Thaler*, 133 S.Ct. 1911 (2013); *Martinez v. Ryan*, 132 S.Ct. 1309 (2012).

### C.    Respondent is not entitled to attorney work product in an application for authorization for ancillary services related to counsel's federal court habeas representation

An application for ancillary funding to investigate an ineffective assistance of trial counsel claim may contain confidential attorney work product related to counsel's federal court *habeas* representation taking, *inter alia*, the following forms:

- Habeas counsel's assessment of and opinions about the scope of trial counsel's pre-trial investigation;

- Habeas counsel's assessment of and opinions about the areas of pre-trial investigation that were not adequately explored or explored at all by trial counsel;

- Habeas counsel's assessment of and opinions about the adequacy of the basis for a defense expert's opinion;

- Habeas counsel's assessment of the scope of the state habeas mitigation investigation; and

- Habeas counsel's own plan to investigate her client's case.

The Respondent is not entitled to any of this information.[7] Thus, an application for authorization to obtain ancillary services containing it demonstrates a need for confidentiality. [8]

---

[7] Even once a habeas corpus petition is filed, and the respondent obtains notice of the claims and detailed factual allegations related to them, the information contained in a habeas corpus petition is fundamentally different from the information contained in an application filed by counsel seeking authorization to obtain ancillary services which contains confidential information. In the former context, counsel has made factual allegations and arguments attempting to demonstrate how those allegations state a constitutional violation. In the latter context, counsel has conveyed counsel's own assessment of and opinions about her client's case as well as future litigation plans (e.g., investigative plan) in an attempt to explain why the requested ancillary services are reasonably necessary to her *representation* of the client.

[8] In any event, the confidentiality of work product survives the litigation for which it was produced. See *F.T.C. v. Grolier Inc.,* 462 U.S. 19, 26 (1983) (observing that "all of the Courts of Appeals that had decided the issue under Rule 26(b)(3) had determined that work-product materials retained their immunity from discovery after termination of the litigation for which the documents were prepared, without regard to whether other related litigation is pending or is contemplated" and that "an overwhelming majority of the Federal District Courts reporting decisions on the issue under Rule 26(b)(3) were in accord with that view"). While work product that has been made public in connection with earlier litigation necessarily loses its confidentiality, work product that has not retains its confidentiality; however, work product

**D.     Disclosing habeas counsel's assessments in an application for authorization for ancillary services is the equivalent to granting Respondent discovery – prohibited absent leave of court and only after a showing of good cause**

Disclosing the aforementioned assessments of habeas counsel to a respondent would be equivalent to granting the respondent discovery. But both the Federal Rules of Civil Procedure—which apply in habeas corpus proceedings—and the Rules Governing 2254 Cases in the United States District Courts do not permit the respondent discovery under these terms. Habeas Rule 6 prohibits discovery by a party in a habeas corpus proceeding absent leave from the court after a showing of good cause. The Federal Rules of Civil Procedure—which freely allow discovery generally—dictate that a party meet stringent requirements before being granted access to an opposing party's work product. Fed. R. Civ. P. 26(b)(3). Even then, the party is entitled only to facts learned by counsel in the course of her representation, never to counsel's impressions, legal analysis, or opinions. *Id.*

Moreover, this is the very stage of proceedings—before the filing of a habeas corpus petition—at which the need to protect confidential attorney work product is at its greatest. *F.T.C. v. Grolier Inc.*, 462 U.S. 19, 30 (1983) (it is "doubtless correct" that "the need to protect attorney work product is at its greatest when the litigation with regard to which the work product was prepared is still in progress") (Brennan, J., concurring); *United States v. Nobles*, 422 U.S. 225, 238-39 (1975) ("At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can ***analyze and prepare*** his client's case." (emphasis supplied)).

---

related to new collateral litigation is not work product created in prior collateral litigation.

V.    **An indigent capital defendant's entitlement to leave to proceed *ex parte* on a request for investigative, expert, or other services cannot be made to depend on the balancing test proposed by the court**

This Court held that in determining whether to consider a request for authorization to obtain ancillary services *ex parte*, a federal court must balance a habeas petitioner's need for confidentiality in preparing her case with other factors such as:

(1)    the State's interest in evidentiary development in federal habeas proceedings;
(2)    the public's interest in fiscal transparency; and
(3)    the court's need for reliable information in deciding whether the requested assistance is really necessary.

These factors have no place in the calculus regarding whether a habeas corpus petitioner is entitled to proceed *ex parte* on a request for ancillary services to obtain adequate representation under 28 U.S.C. § 3599.

A.    **The text of the statute itself provides the criteria for consideration of a request for ancillary services *ex parte*: a showing that confidential information would be disclosed**

First, the text of the statute itself provides the criteria for consideration of a request for ancillary services *ex parte*: a showing that confidential information would be disclosed. The statute makes no mention of balancing this showing against any other interests. In short, Congress has already struck this balance and decided that a showing of confidentiality alone is sufficient for a court to permit an indigent capital habeas corpus petitioner to make an *ex parte* application for ancillary services.

**B.    The change in the statute did not create a State interest in evidentiary development, nor was it intended to grant to the State a role in pre-petition funding**

Second, the State's potential interest in evidentiary development in federal habeas proceedings has nothing to do with an indigent capital habeas petitioner's statutory right under Section 3599 to adequate representation. In the first place, ensuring an indigent habeas corpus petitioner's right to adequate representation by providing ancillary services reasonably necessary to his representation has nothing to do with evidentiary development. The right to adequate representation includes the right to counsel who investigates. *See McFarland*, 512 U.S. at 854–55. The right to these services, where reasonably necessary to representation, is built directly into the federal statutory guarantee of adequate representation and is not made to depend upon the State's interest in anything.[9] 18 U.S.C. § 3599(a).

The change in the statute from permitting all indigent requests for ancillary services to be made *ex parte* notwithstanding whether they contained confidential information to permitting requests for ancillary serves only if they contain confidential services did not create a State interest in evidentiary development and was not intended to grant to the State "some role in the process for funding experts and investigators in the postconviction habeas review of death-penalty cases in

---

[9] After investigation, counsel makes *allegations* in a petition that may or may not be supported by *proffers* of evidence like affidavits and that form the basis of claims for relief. Only after the federal court determines, based on the petition's allegations and the respondent's answer, that there are material and disputed factual allegations in need of resolution does *evidence* even come into play in the proceeding. *See* Rules Governing Section 2254 Cases, Rules 2 & 6-8. That investigation by counsel might generate information that could be marshaled as evidence when the court puts a habeas petitioner to his burden to prove the allegations in his petition does not implicate the State's interest in evidentiary development, if any such interest exists. It is the provisions of 28 U.S.C. § 2254 that govern a federal court's adjudication of a habeas corpus petition, and accordingly also that govern the State's interest in evidentiary development, if any, during the course of a habeas proceeding. The only provision of the AEDPA that even arguably gives the State an interest in evidentiary development is 28 U.S.C. § 2254(e)(1), which prohibits evidentiary hearings when a habeas petitioner has failed to develop the factual basis for his claim in state court.

federal court." *See* Document 13 at 9.

Rather, it was simply—and reasonably—intended to preclude *ex parte* consideration of requests for ancillary services which were unnecessary to protect any confidential information.[10] *See Director of Revenue of Mo. v. CoBank, ACB*, 531 U.S. 316, 323 (2001) (observing that "it would be surprising" if Congress had effected a significant change in the law via technical amendment).

Regardless, to whatever extent the Respondent has an interest in evidentiary development in federal habeas proceedings, such interest must per force yield to the express grant of the right to adequate

---

[10] The Respondent's reliance on two Senators hardly establishes a legislative intent requiring deviation from the statute's plain language. *See Ullman v. United States*, 350 U.S. 422, 433 (1956) ("The most that can be said for the legislative history is that it is on the whole inconclusive. Certainly, it contains nothing that requires the court to reject the construction which the statutory language clearly requires."). If Senator Hatch's expressed opinion had been enacted into law, *ex parte* applications would have been entirely disallowed. The entire legislative history on the matter is far more complex, but what is clear is that the few Senators participating in the debate held different viewpoints on the degree to which a defendant is entitled to *ex parte* proceedings, and that the compromise reached is reflected in the plain language of the statute.

Moreover, Senator Spector, one of the sponsors of the bill and upon whom the Respondent relied, in fact

> concur[red] with the Senator from Delaware [Senator Biden] when he says that there ought not to have to be disclosure by defense counsel in the presence of the prosecutor to matters which would prejudice the defendant in investigating the case on the facts, or as to getting expert opinion as to mental state and competency. … ***As a sponsor of this language, let me state that it is our intent here in this legislation that there not be a circumstance in which the defense is compelled to reveal, in front of the prosecutor, matters which would be prejudicial to his opportunity to present a defense.***

141 Cong. Rec. S7803-01, S7815 (emphasis supplied). In other words, Senator Spector believed that an indigent capital habeas petitioner ought not be made to reveal confidential attorney work product in order to make application to the court for ancillary services. Indeed, Senator Biden came to believe that if Senator Spector's understanding of his language was how the technical amendment removing mandatory *ex parte* proceedings was intended, then Senator Spector was

> coming awfully close to what I intend. If it is read the way in which the distinguished Senator from Pennsylvania [Senator Spector] reads it, which is that if there is a showing for the need for confidentiality, then the judge can meet only with the defense counsel and make his or her judgment. That, quite frankly, gets a lot closer to what I intend.

*Id.*

representation contained in Section 3599.[11] Moreover, those interests may be asserted in due course; the Respondent's interest in evidentiary development, however, is distinct from a habeas petitioner's interest in adequate representation, which includes investigation.

### C.     Congress has already addressed the public's interest in fiscal transparency by requiring disclosure *after* the disposition of the petition

Third, the Congress has already struck a balance between the public's interest in fiscal transparency and an indigent capital habeas petitioner's right to adequate representation by requiring that the amounts paid for services in any case "shall be disclosed to the public, ***after the disposition of the petition***." 18 U.S.C. § 3599(g)(3) (emphasis supplied). If Congress believed the public interest in fiscal transparency should be considered in determining whether an indigent capital  habeas petitioner should be given leave to file an *ex parte* application for ancillary services during the litigation, it could have expressly required a federal court to balance that interest against the petitioner's need for confidentiality. It did not do so.

---

[11] To the extent this Court's order can be read to suggest that the State has an interest in the underlying question whether authorization to obtain ancillary services is granted, it must be observed that Congress did not amend Section 3599(f) with the intention that the State of Texas become overseer of the Court's budget. *See Mitcham v. Calderon*, No. C 94-2854 SBA, slip op. at 13 (N.D. Cal. Dec. 23, 1996) (unpublished) (attached as Exhibit 1) ("[A]s a representative of the state, respondent has no interest in the allocation of *federal* funds. The new law does not purport to confer such an interest on respondent. Without such an interest, no process is due respondent before the court adjudicates funding issues." (emphasis in original)).

**D.    Respondent, as a party opponent, is not a reliable source of information about what tools his adversary should have. The Court's need for reliable information is best accomplished by allowing counsel the freedom to reveal to the Court, in camera, the work product that reveals why and how ancillary services are needed**

Fourth, the Court's need for reliable information to decide whether the assistance is reasonably necessary is best accomplished by allowing counsel for a habeas petitioner the freedom to reveal to the Court—and to keep confidential from her party opponent—her work product when making requests related to the adequacy of her representation. Requiring that application for defense services be made openly constrains what counsel may reveal to the court about why those services are needed and how those services will be used. Under these circumstances, the Court's decision will necessarily be based on less information and, as a consequence, less reliable. Indeed, it may dissuade counsel from requesting the resources at all, creating a substantial risk that a petitioner's habeas corpus claims would never be heard on the merits and effectively depriving indigent capital habeas petitioners of their right to adequate representation entirely.

Moreover, the court's need for reliable information about whether an indigent capital habeas petitioner is receiving adequate representation is not served by input from the respondent any more than will seeking input from respondent about which counsel to appoint an indigent petitioner. The State is an indigent capital habeas petitioner's party opponent in a legal proceeding. It is always in the State's interest to deprive the petitioner of adequate representation in order to make its case against the petitioner easier for itself. Indeed, no party to any law suit will be a reliable source of information about which tools his adversary should have—or even whether he should have any tools *at all*—to build a case against him. The Respondent routinely opposes a petitioner's obtaining leave to file an application for ancillary services *ex parte* and the underlying request for ancillary

services. [2]1

Ultimately, this Court's proposed revision to the well-established *Patrick* standard gives an indigent capital habeas corpus petitioner's party opponent an unwarranted interest in his statutory right to adequate representation and thereby creates a substantial risk that the petitioner's claims would never be heard on the merits. In short, the standard threatens to deprive qualified habeas petitioners of their right to adequate representation.

## VI.   The procedure outlined in *Patrick* is an appropriate mechanism for the court to determine whether a showing of the need for confidentiality has been made

Congress did not intend for counsel to make disclosures of privileged information in exchange for obtaining services that are "reasonably necessary" to represent indigent persons facing death. The procedure outlined in *Patrick* and *Dowthitt* was itself a compromise between counsel's need to protect her work product and the dictates of Section 3599(f), which require "a proper showing . . . concerning the need for confidentiality." *Patrick* allows for *in camera* inspection of

---

[12] Indeed, the Respondent has repeatedly asserted the extreme position that habeas petitioners are *never* entitled to investigate their cases:

> Any Evidence Discovered Would Be Barred.
>
> When a federal court reviews a state court determination under § 2254(d)(1), the review is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). Any evidence developed in these federal proceedings with federal funds cannot be used to evaluate the reasonableness of the state court's adjudication.

Thaler's Response and Brief in Opposition to Medina's Motion for Authorization of Funds for Expert Assistance and Statement of the Need For Confidentiality, at 9, *Medina v. Thaler*, No. 09-cv-03223 (S.D. Tex. June 27, 2012). *See also* Respondent's Opposition to Irvan's Motion for Investigative Assistance, at 3–4, *Irvan v. Thaler*, No. 11-mc-00293 (S.D. Tex. May 2, 2012) (asserting that "it is well settled, under both pre-AEDPA and post-AEDPA standards, that state prisoners in federal habeas review are not entitled to raise unexhausted claims or to further factually develop their partially exhausted claims in federal court."). The Respondent's categorical opposition to *investigation* in habeas corpus cases reads Section 3599 out of the statute and thus sheds no light on the question of whether an individual petitioner has demonstrated that federal law entitles him to resources. To the contrary, the Respondent's legally unsupportable approach to the issue will only obfuscate the question before the Court.

assertions of privilege, the traditional mechanism by which courts test claims of confidentiality. *See United States v. Zolin*, 491 U.S. 554, 569 (1989) (the use of in camera inspection to test claims of privilege is well established in the federal courts). If *in camera* inspection reveals that the proposed pleading does not contain confidential information to which the respondent is not entitled, then the Court denies *ex parte* consideration of the request and offers the petitioner an opportunity to withdraw the request or to file it publicly. If *in camera* inspection reveals that the proposed pleading does contain confidential information, then the Court grants leave to file it *ex parte* and considers and rules upon the request *ex parte*. As many courts before this have found, this procedure "is a sensible and equitable method to implement" Section 3599(f). *See Patrick*, 37 F.Supp. at 816. *See also Dowthitt*, 1998 WL 1986954 at *2; *Shields*, 48 F.Supp.2d at 721; *Haight v. Parker*, No. 02-cv-00206, 2010 WL 1489979 (W.D. Ky. Apr. 13, 2010) (*Patrick* procedure utilizing *in camera* inspection is "a sensible solution"). It is faithful to the language and intent of 28 U.S.C. § 3599(f) and it avoids problematic constitutional infirmities arising from interpretations that impose special burdens on indigents.

**Conclusion**

For these reasons, the Court should reconsider revising the *Patrick* procedure, use *in camera* inspection of Mr. Robertson's proposed application to determine whether the application contains confidential information to which the respondent is not entitled, and permit *ex parte* consideration of Mr. Robertson's application if it contains any such confidential information.

Respectfully submitted,

_____

Lydia M.V. Brandt, Esq.
THE BRANDT LAW FIRM, P.C.
Texas Bar No. 00795262
P.O. Box 850843
Richardson, Texas   75085-0843
(972) 699-7020 Voice; (972) 699-7030 Fax

**Certificate of Conference**

I hereby certify that on August 5, 2013, I communicated with Thomas Jones, Assistant Attorney General, Postconviction Litigation Division, Office of the Attorney General of Texas, counsel for the Respondent.  Respondent is opposed to this motion.

_____

Lydia M.V. Brandt

## Certificate of Service

This certifies that on August 5, 2013, I electronically filed the foregoing document with the clerk of court using the electronic case filing system of the court.  The electronic case filing system sent a notice of electronic filing to Thomas, Jones, Assistant Attorney General and Counsel for Respondent, Office of the Attorney General, Postconviction Litigation Division,  P.O. Box 12548, Capitol Station, Austin, TX 78711.

_____

Lydia M.V. Brandt, Esq.

cc:     Mr. Mark Robertson, #000-992
        Polunsky Unit, TDCJ
        3872 FM 350 South
        Livingston, TX 77351-8580