UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARK ROBERTSON, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 3:13-CV-728-G-BK |
| | § | |
| | § | (Death Penalty Case) |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

## ROBERTSON'S OPPOSED MOTION  FOR STAY OF EXECUTION

Comes now Petitioner/Appellant, MARK ROBERTSON, and files this Motion for Stay of Execution.

"A stay of execution is an equitable remedy." *In re Paredes*, 587 Fed. Appx. 805, 826 (5th Cir. 2014). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [judicial] discretion." *Charles v. Stephens*, No. CV H–09–0592, 2015 WL 11117729, at *2 (S.D. Tex. May 4, 2015), *aff'd*, 612 Fed. Appx. 214 (5th Cir. 2015; *Nken v. Holder*, 556 U.S. 418, 433–34 (2009) (citations omitted). In deciding whether to issue a stay of execution, a court must consider:

(1)   whether the stay applicant has made a strong showing that he is likely to succeed on the merits;

(2)   whether the applicant will be irreparably injured absent a stay;

(3)   whether issuance of the stay will substantially injure the other party interested in the proceeding; and

1

(4)     where the public interest lies. *Nken*, 556 U.S. at 425–26.

*Ruiz v. Davis*, 2017 WL 5476397, at *3 (W.D. Tex. 2017).  *See also  Sells v. Livingston*, 561

Fed.Appx. 342, 344 (5th Cir. 2014), *citing Nken v. Holder*, 556 U.S. 418, 434 (2009)*(quoting Hilton*

*v. Braunskill*, 481 U.S. 770, 776 (1987).

**PRONG TWO**: Mr. Robertson will be will be irreparably injured absent a stay (Prong Two).

As more fully detailed immediately below, Dallas County has a history of setting execution dates

for Mr. Robertson to drive litigation and attempt to moot judicial review of the constitutionality of

the criminal judgment it obtained against him. A Dallas County grand jury indicted Mr. Robertson

for murder occurring in the course of a robbery (capital murder) on September 18, 1989. 1 CR 2.

Trial occurred, and he was adjudged guilty and sentenced to death by the Criminal District Court No.

5 ("convicting court") on February 11, 1991. 1 CR 210. Because the trial occurred after the Supreme

Court's decision in *Penry v. Lynaugh*, 492 U.S. 302 (1989), but before the Texas legislature amended

the criminal code to include a mitigation special issue, the jury was given a "nullification instruction"

– as happened in other cases in which the jury was instructed to return a false answer to one of the

special issues if it believed the mitigating evidence warranted a life sentence. *See Penry v. Johnson*,

532 U.S. 782, 789-91 (2001) (discussing the instruction).

Mr. Robertson raised on appeal that the sentencing scheme and instruction violated the

Eighth Amendment guarantee of individualized sentencing.  However, the Texas Court of Criminal

Appeals ("TCCA") overruled the error and affirmed the judgment on December 8, 1993. *Robertson*

*v. State*, 871 S.W.2d 701, 710-11 (Tex. Crim. App. 1993). Two weeks later, on December 22, 1994,

the convicting court scheduled Mr. Robertson's execution for January 25, 1994. 1 CR 21-22. On

January 5, the convicting court appointed lawyer Kerry FitzGerald to represent Mr. Robertson in a

state post-conviction proceeding. 1 CR 25. Appointed counsel immediately filed a motion to push back the execution date, because he was "totally unfamiliar with the trial record in this cause." 1 CR 54. On January 9, 1995, the convicting court modified the execution date to June 27, 1995.

On June 7, 1995, the Texas Legislature passed systemic reform of Texas' post-conviction system, entitling death-sentenced individuals to representation in an initial state habeas corpus proceeding for the first time. The act also addressed scheduling execution dates; it prohibited a convicting court from setting an execution date if a timely habeas application was filed until the TCCA denied relief on it. The act was to go into effect on September 1, 1995. On June 14, 1995, and following FitzGerald's withdrawal, the convicting court again modified the execution date to August 15, 1995, just before the new law would go into effect. On July 27, 1995, the convicting court again modified the execution date, this time to April 30, 1996, citing its inability to secure other counsel to represent Mr. Robertson.

On November 1, 1995, the trial court made findings of indigency under the new law and noted Mr. Robertson's desire for representation. On December 5, 1995, a motion to stay the execution was filed in the TCCA, and it granted it January 9, 1996. Thus, for over an entire year – from December 22, 1994, until January 9, 1996 – Mr. Robertson lived under an active execution warrant. It would not be until November 5, 1996, however, that the TCCA would appoint attorney Cynthia Cline to represent Mr. Robertson. On January 16, 1997, however, the TCCA granted Cline's motion to withdraw. On April 14, 1997, Mr. Robertson, represented *pro bono* by lawyer Randy Schaffer, filed a habeas corpus application. The TCCA denied the application on November 18, 1998.

On November 23, 1998, Mr. Robertson filed a habeas corpus application in the United States

District Court for the Northern District of Texas. *See* Doc. 1, *Robertson v. Director*, No. 98-cv-02768. The application raised, inter alia, the *Penry* claim that the TCCA rejected on direct appeal. On April 28, 2000, the district court denied the application, including the *Penry* claim. *See* Doc. 12, *Robertson v. Director*, No. 98-cv-02768. On December 4, 2000, the Fifth Circuit refused to hear an appeal.

On January 11, 2001, the convicting court again set an execution date for Mr. Robertson for May 22, 2001. On May 9, 2001, Mr. Robertson's lawyer filed a motion to modify the execution date, explaining that his petition for a writ of certiorari to review the Fifth Circuit's decision was pending in the Supreme Court. On or around May 18, 2001, the Supreme Court stayed the execution pending its consideration of the certiorari petition.

On June 4, 2001, the Supreme Court decided *Penry v. Johnson*, 532 U.S. 782 (2001) [hereinafter *Penry II*], which held that the "nullification instruction" did not cure the Eighth Amendment error the Supreme Court had identified in *Penry I*. On June 11, 2001, the Supreme Court vacated the Fifth Circuit's judgment in Mr. Robertson's case and remanded it with instructions to reconsider its decision not to hear an appeal in light of *Penry II*. *Robertson v. Johnson*, 533 U.S. 901 (2001).

On January 17, 2002, the Fifth Circuit issued an opinion concluding that there was no substantial difference between the jury instructions on mitigation given in Mr. Robertson's case and those given in *Penry II*. *Robertson v. Cockrell*, 279 F.3d 1062 (5th Cir. 2002). It granted a certificate of appealability, summarily vacated the district court's judgment, and remanded with instructions to grant the application. *Id*. The full court granted rehearing *en banc*, however, and on March 14, 2003, the *en banc* court reversed the panel and re-affirmed the district court's denial of Mr. Robertson's

4

Penry claim. *Robertson v. Cockrell*, 325 F.3d 243, 258 (5th Cir. 2003).

On May 23, 2003, the convicting court again set an execution date for August 20, 2003. On August 13, 2003, Mr. Robertson filed a subsequent habeas corpus application again raising his *Penry* claim. On August 19, 2003, one day before his scheduled execution, the TCCA granted a stay of execution, and authorized Mr. Robertson's subsequent habeas application for consideration. Order, *Ex parte Robertson*, No. WR-30,077-02 (Aug. 19, 2003). On March 12, 2008, more than 15 years after he first presented the Penry issue for review, the TCCA determined that Mr. Robertson's prior judgment was obtained in violation of the Eighth Amendment, granted the application, and ordered a new sentencing hearing. *Ex parte Robertson*, No. AP-74,720, 2008 WL 748373 (Tex. Crim. App. 2008) (not designated for publication).

Thus, as the procedural history starkly reflects, Dallas County has consistently sought to execute Mr. Robertson in violation of the United States Constitution and before initial collateral proceedings could be completed. Now, after Mr. Robertson has been resentenced, Dallas County has again set an execution date while initial collateral proceedings are pending in this federal district court. This District Court should stay his execution on any number of grounds to permit the orderly adjudication of the legality of his confinement under federal law.

First, *Lonchar v. Thomas*, 517 U.S. 314 (1996), requires that Mr. Robertson not be executed until his initial collateral proceeding in federal district court has concluded. *Id*. at 320. The setting of an execution date while an initial habeas corpus application is pending in federal district court is unheard of today. Undersigned counsel can think of no time in the past 15 years in which an execution date has been set for an individual while the individual has an initial habeas corpus application on file and still pending before a federal district court, even when the case has been

returned to the district court by the court of appeals. Thus, that this District Court has once adjudicated Mr. Robertson's application against him is of no moment. The judgment was reversed, an appellate court mandate issued, and Mr. Robertson is before this District Court on a pending habeas corpus application.

Second, *Barefoot v. Estelle*, 463 U. S. 880 (1983), entitles Mr. Robertson to appellate review for any issue for which either a COA has been granted or for which he has as of right. Id. at 893-94. While it is unheard of for an execution date to be set while a habeas corpus application is pending in the district court, it is likewise unheard of in the last fifteen years for an execution date to be set while an appeal from an initial application is being sought or pending in the court of appeals. Regardless of how this District Court rules on remand, a stay of execution will be required to resolve proceedings either in this District Court or on appeal. Should this District Court deny providing Mr. Robertson the representation he requests to meaningfully plead facts supporting a Sixth Amendment Strickland claim, he will have an appeal as of right on that question in the appellate court, triggering Barefoot. Should this District Court provide Mr. Robertson the representation he seeks, then a stay will be required to afford him time to use the representation services he obtains and to plead the facts learned from the investigation.

Third, Mr. Robertson may not be executed until he has been afforded the representation in federal collateral proceedings that he is due under 18 U.S.C. § 3599. *McFarland v. Scott*, 512 U.S. 849, 858 (1994) (person sentenced to death may not be executed before provision of meaningful representation required by statute). *See also Battaglia v. Stephens*, 824 F.3d 470, 475 (5th Cir. 2016) (staying execution because deprivation of representation to death-sentenced individual had "stunted the evidence developed thus far as to the merit of his underlying [] claim"). Mr. Robertson has

argued that he has to date been deprived of representation in the form of investigative and other services to assist his appointed counsel in the investigation and development of facts necessary to adequately identify and plead habeas corpus claims that Mr. Robertson is confined in violation of federal law. Appointed counsel has a duty to conduct this investigation. *See McCleskey v. Zant, 499* U.S. 467, 498 (habeas corpus applicant "must conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief in the first federal habeas petition"). Absent appropriate post-conviction investigation, Mr. Robertson is exposed to the substantial risk that meritorious habeas corpus claims will never be heard. *McFarland*, 512 U.S. at 856. *See* Supplemental Brief (Doc 92).

**PRONG THREE**:  In contrast, a stay will not substantially injure Director Davis, the other party interested in the proceeding (Prong Three).  In fact, the Director's motion to set a briefing schedule subsequent to the remand from the Fifth Circuit Court of Appeals was made "in light of" the setting of an execution date by the Criminal District Court No. 5 of Dallas County. The urgency of an execution setting, however, was created by the State of Texas and the Director, who were on notice by Mr. Robertson in his responsive pleadings that setting an execution date was wildly premature because his initial habeas corpus application was still pending in federal district court.

**PRONG ONE**:  In his Supplemental Brief (Doc 92) in response to this District Court's order (Doc 91), Mr. Robertson has made a strong showing that he is likely to succeed on the merits (Prong One).  *Ayestas v. Davis*, 138 S. Ct. 1080, 1085 (2018) embraced the reasonable attorney rule in evaluating requests for investigative assistance.  Rejecting the Fifth Circuit's substantial need test that the Fifth Circuit applied to evaluate § 3599(f) representation requests, *Ayestas* held that investigative services should be made available under § 3599(f) when a "reasonable attorney would

7

regard the services as sufficiently important." Id. at 1093.

Applying *Ayestas* to the *Robertson* case, a "reasonable attorney would regard the services as sufficiently important." As detailed more fully in his Supplemental Brief, II, (Doc 92), the representation request for investigative services made by Mr. Robertson as part of his habeas litigation before this District Court was not made as part of a rote routine or in a vacuum. Instead, it was based on § 3599 counsel's [undersigned counsel Brandt's] due diligence efforts that included: reviewing court records; reviewing other records like Mr. Robertson's files from other legal teams; and speaking to witnesses such as Mr. Robertson's former legal team members, as well as a separate consultation with a different mitigation specialist, who arrived at the same conclusion as the state mitigation specialist – that a thorough background investigation was not conducted at trial – and who identified discrete investigative tasks that should be performed.

From these due diligence efforts, § 3599 counsel formed reasonable opinions that a plausible Strickland claim existed and for which credible arguments to overcome any procedural default existed. Thereafter, § 3599 counsel filed several requests for investigative services because a reasonable attorney would pursue that investigation for a paying client in a federal habeas corpus proceeding. Mr. Robertson therefore should have been afforded the representation he sought to discover and plead facts related to the claim, but he was not.

With the Supreme Court's *Ayestas* decision, this District Court should reconsider its previous denials and hold that investigative services are reasonably necessary to Mr. Robertson's representation in this case. If he is afforded this representation, Mr. Robertson will be able to plead a substantial Sixth Amendment claim and demonstrate that any procedural default of it is attributable to ineffective representation by state collateral counsel.

8

**PRONG FOUR**:  Finally, the public interest lies in favor of granting the Motion to Stay the Execution (Prong Four).  Mr. Robertson has not had a meaningful opportunity in either state or federal court to present his Sixth Amendment IATC failure-to-investigate claim.  *McFarland v. Scott*, 512 U.S. 849, 858 (1994) (stay required to be issued where opportunity for appointed counsel to meaningfully research and present a defendant's habeas claims has not been afforded).  See Supplemental Brief, II (Doc 92)..

In summary, Mr. Robertson has satisfied all four prongs and this District Court should grant the Motion for a Stay of Execution.

## CONCLUSION

Petitioner requests that the Court stay the execution, and grant the requests for representation services, and thereafter provide habeas relief to Mr. Robertson.

_Lydia M.V. Brandt_

_____

Lydia M.V. Brandt, Esq.
Texas Bar No.  00795262
lydiabrandt566@gmail.com
THE BRANDT LAW FIRM
P.O. Box 326
Farmersville, TX 75442-0326
Voice: (972) 752-5805
Counsel for Petitioner

### Certificate of Conference

I hereby certify that on January 10, 2019, I communicated with Gwendolyn S. Vindell, Assistant Attorney General, counsel for the Respondent.  Respondent stated she is opposed to this

motion.

_____

Lydia M.V. Brandt

## CERTIFICATE OF SERVICE

This certifies that on January 10, 2019, I electronically filed the foregoing document with the clerk of court for the US District Court Northern District Texas using the electronic case filing system of the court.   The electronic case filing system sent a notice of electronic filing to the following attorney of record, who has consented in writing to accept this notice as service of this document by electronic means:   Gwendolyn S. Vindell, Assistant Attorney General,   Attorney General's Office, P.O. Box 12548, Capitol Station,   Austin, TX 78711-2548

_____

Lydia M.V. Brandt, Esq.
Texas Bar No.  00795262
THE BRANDT LAW FIRM
P.O. Box 326
Farmersville, TX 75442-0326
lydiabrandt566@gmail.com
Voice: (972) 752-5805
Counsel for Petitioner

cc:   Mark Robertson, 000-992
Polunsky Unit
Texas Department of Criminal Justice
3872 FM 350 South
Livingston, TX 77351-8580